IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ISRAEL GUTIERREZ, #246141,    )
          )
       Plaintiff,    )
          )
    v.    )      CASE NO. 2:07-CV-601-WC
          )            [WO]
          )
SHERIFF D. T. MARSHALL, et al.,    )
          )
       Defendants.    )

## MEMORANDUM OPINION

### I.  INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Israel Gutierrez ["Gutierrez"], a state inmate, in which he presents claims against D. T. Marshall, the sheriff of Montgomery County, Alabama, and county correctional officers Martin Crenshaw and Annie Finley.[1]  Specifically, Gutierrez complains the defendants denied him adequate medical treatment for a hand injury during his confinement at the Montgomery County Detention Facility.  Gutierrez seeks declaratory relief and monetary damages for the alleged violation of his constitutional rights.

The defendants filed a special report and relevant supporting evidentiary materials addressing Gutierrez's claim for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to construe this report as a motion for summary

---

[1]The defendants advise that officer Finley's correct name is Findley.  For purposes of this opinion, the court will refer to the defendant as she is identified by the plaintiff in the complaint.

judgment.  *Order of September 14, 2007 - Court Doc. No. 15*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence

---

[2]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine issue of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail
> on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Gutierrez is required to produce "sufficient [favorable]

evidence" which would be admissible at trial supporting his claim of a constitutional violation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id.* at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element

4

essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there

5

is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible

on its face or which can be reduced to admissible form indicates that there is no genuine

issue of material fact and that the party moving for summary judgment is entitled to it

as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324

(summary judgment appropriate where pleadings, evidentiary materials and affidavits

before the court show there is no genuine issue as to a requisite material fact); *Waddell*,

276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party

must produce evidence such that a reasonable trier of fact could return a verdict in his

favor).

Although factual inferences must be viewed in a light most favorable to the

nonmoving party and *pro se* complaints are entitled to liberal interpretation by the

courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence

a genuine issue of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v.

Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone

does not mandate this court's disregard of elementary principles of production and proof

in a civil case.  In this case, Gutierrez fails to demonstrate a requisite genuine issue of

material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

### III.  DISCUSSION

### A.  Facts

6

On March 31, 2005, Gutierrez entered the Montgomery County Detention Facility on a controlled substance charge. The Circuit Court of Montgomery County, Alabama convicted Gutierrez of a controlled substance offense and imposed sentence upon him for this conviction on February 17, 2006. Gutierrez was transferred to the custody of the Alabama Department of Corrections on May 30, 2006.[3]

On September 7, 2005, Gutierrez injured his left hand. He reported to the health care unit at the Montgomery County Detention Facility complaining of pain and swelling in his left arm/hand. *Defendants' Exhibit 5 (Medical Progress Notes) - Court Doc. No. 14-2* at 9. The attending nurse applied ice packs and an ace bandage to the injury, prescribed Ibuprofen for the pain and ordered X-rays of Gutierrez's left hand and fingers. *Id.*

On September 8, 2005, Southern Services, LLC, performed X-rays of Gutierrez's left hand. The findings of these X-rays indicated "an oblique lucency transversing the head of the third metacarpal distally. Bone mineral density appears normal otherwise.

---

[3]The evidentiary materials before the court indicate that the actions about which Gutierrez complains relate to medical treatment provided to him as both a pre-trial detainee and convicted prisoner. Nevertheless, regardless of his status, the applicable standard of review remains the same. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.... However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492 (1986) (For analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.); *Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

No other fractures are detected." *Defendants' Exhibit 5 (Radiology Report) - Court Doc. No. 14-2 at 14.* The impression demonstrated "[o]blique fracture of distal third metacarpal head nondisplaced." *Id.* Based on the findings of the X-rays, medical personnel at the Montgomery County Detention Facility continued Gutierrez on his prescription for Ibuprofen throughout his stay in the facility, provided additional medication to alleviate the pain associated with this injury and allowed him access for any necessary treatment. *Defendants' Exhibit 5 (Physicians' Orders) - Court Doc. No. 14-2 at 12-13.*

Medical personnel routinely examined Gutierrez, addressed his complaints regarding the injury to his left hand and provided all necessary treatment to resolve his complaints. Specifically, on September 10, 2009, Gutierrez reported to the health care unit complaining of "swelling & pain" in his left hand. *Defendants' Exhibit 5 (Medical Progress Notes) - Court Doc. No. 14-2 at 10.* A facility nurse evaluated Gutierrez's injury to his left hand. She observed the hand "hand warm to touch ... no discoloration[,]" instructed Gutierrez "to keep hand [elevated] to [lower] swelling" and provided Gutierrez his prescribed medication. *Id.* On September 13, 2005, Gutierrez filed an inmate grievance with correctional personnel challenging the treatment provided for the injury to his left hand and requesting an appointment with the detention facility's physician for evaluation of pain and swelling in his injured hand. *Defendants' Exhibit 5 (Inmate Grievance Form) - Court Doc. No. 14-2 at 25.* The grievance clerk,

officer Davis, investigated Gutierrez's claim and determined he had been "scheduled to see the doctor on 9/15/05." *Id.* at 26.

On September 15, 2005, the jail's physician, Dr. Nichols, examined Gutierrez and referred the inmate to a free-world physician for additional evaluation of the injury to his left knuckle. The referral physician, Dr. John D. Moorehouse, examined Gutierrez on September 16, 2005 and noted "[n]o acute injury" with only a fracture to the "(L) 3rd metacarpal." *Defendants' Exhibit 5 (Patient Referral Form) - Court Doc. No. 14-2* at 22. Dr. Moorehouse determined treatment as "splint/ortho[pedic] follow up" and continued the prescription for Motrin.[4] *Id.* In accordance with the ordered treatment, medical personnel at the Montgomery Detention Facility obtained an appointment for Gutierrez with Dr. Michael E. Freeman, an orthopedic surgeon, on November 15, 2005. Dr. Freeman examined Gutierrez, noted stiffness in his hand and prescribed therapy as treatment for the stiffness. *Defendants' Exhibit 5 (Patient Referral Form) - Court Doc. No. 14-2* at 17. Dr. Freeman scheduled a follow-up appointment for December 6, 2005. *Id.* at 19.

Jail personnel transported Gutierrez to his appointment with Dr. Freeman on December 6, 2005. During his evaluation of Gutierrez's left hand, Dr. Freeman noted the need for continued therapy. *Defendants' Exhibit 5 (Patient Referral Form) - Court Doc. No. 14-2* at 21. On January 3, 2006, correctional officials again transported

---

[4]Motrin is a brand name under which Ibuprofen is sold.

9

Gutierrez to the office of Dr. Freeman for additional evaluation of Gutierrez's left hand.

Dr. Freeman determined that the stiffness in Gutierrez's hand was "resolving" and

"released" him from any further treatment or therapy regarding his hand.  *Defendants'*

*Exhibit 5 (Patient Referral Form) - Court Doc. No. 14-2* at 20.

## B. Absolute Immunity

To the extent Gutierrez sues the defendants in their official capacities, they are

immune from monetary damages.[5]  Official capacity lawsuits are "in all respects other

than name, ... treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159,

166 (1985).   "A state official may not be sued in his official capacity unless the state

has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital*

*v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress

has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59],

116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh

Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir.

1990) (citations omitted), and Congress has not abrogated Alabama's immunity.

Therefore, Alabama state officials are immune from claims brought against them in their

official capacities."  *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to

---

[5]Under all facets of Alabama law, a county sheriff and his staff act as state officers "when supervising inmates and otherwise operating the county jails." *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates sheriff and, by extension, his staff as members of State's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) (sheriff is executive officer of State).

sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994). Thus, the defendants are entitled to absolute immunity from any claims for monetary relief presented against them in their official capacities. *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### C.  Respondeat Superior - Sheriff D. T. Marshall

The pleadings filed in this case demonstrate that D. T. Marshall is named as a defendant solely due to his supervisory position as the sheriff of Montgomery County, Alabama.  The law is well settled that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of subordinates/employees under either a theory of respondeat superior or vicarious liability); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Florida*, 402 F.3d 1092, 1115-1116 (11th Cir. 2005) (a prisoner simply cannot rely on theories of vicarious liability or respondeat superior to establish liability).  Thus,

defendant Marshall is liable for the medical treatment provided to Gutierrez only if Marshall "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted). "Although § 1983 requires a connection between the official's acts or omissions and the plaintiff's injury, an official also may be liable where a policy or custom that he established or utilized resulted in deliberate indifference to an inmate's constitutional rights. *Id.* at 1059." *Salas v. Tillman*, 162 Fed.Appx. 918, 922 (11th Cir. 2006). A supervisory official "may be liable only for implementing a policy that is 'itself [ ] a repudiation of constitutional rights' and 'the moving force of the constitutional violation.' *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir.1985)." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).

It is undisputed that Sheriff Marshall did not participate in the medical treatment provided to Gutierrez nor did Gutierrez make any request for medical treatment directly to Marshall. Moreover, the record before the court demonstrates that the actions about which Gutierrez complains did not occur pursuant to a policy enacted by Marshall; rather, the only policy relevant to the claims pending herein requires that medical treatment be provided to inmates upon request. *Defendants' Exhibit 1 (Affidavit of D. T. Marshall) - Court Doc. No. 14-2* at 1. Thus, the court must address Gutierrez's claims against this defendant under the causal connection prong.

12

Under this method of liability, "'[t]he causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.' ... Furthermore, to be sufficient to notify the supervisor, the deprivations must not only be widespread, they also 'must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.'" *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006), *cert. denied*, 550 U.S. 956, 127 S.Ct. 2428, 167 L.Ed.2d 1129 (2007) (citations omitted). Gutierrez presents no evidence of widespread, obvious, flagrant or rampant problems of continuing duration regarding medical treatment in the face of which Marshall failed to take corrective action. Consequently, there is nothing before the court sufficient to establish the requisite causal connection with respect to the claims against defendant Marshall and summary judgment is due to be granted in favor of this defendant.

### D. Officers Crenshaw and Finley

Correctional officials may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.' *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970,

1982-83, 128 L.Ed.2d 811 (1994).  A plaintiff must also show that the constitutional violation caused his injuries."  *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation.  With respect to the requisite objective elements,  an inmate must first show "an objectively substantial risk of serious harm ... exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner."  *Marsh*, 268 F.3d 1028-1029.  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference....  The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'  ... ***[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment***."  *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety....  It is ***obduracy and wantonness, not inadvertence or error in good faith***, that characterize

14

the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the named defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, jail personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial

15

risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at

837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have

actual knowledge of a serious condition, not just knowledge of symptoms, and ignore

known risk to serious condition to warrant finding of deliberate indifference).

Furthermore, "an official's failure to alleviate a significant risk that he should have

perceived but did not, while no cause for commendation, cannot under our cases be

condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate
> indifference, ... the Supreme Court has ... emphasized that not 'every
> claim by a prisoner that he has not received adequate medical treatment
> states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97
> S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the
> eighth amendment only when it is 'so grossly incompetent, inadequate, or
> excessive as to shock the conscience or to be intolerable to fundamental
> fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of
> negligence or malpractice do not rise to the level of constitutional
> violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical
> malpractice does not become a constitutional violation merely because the
> victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or
> medical malpractice 'not sufficient' to constitute deliberate indifference);
> *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute
> deliberate indifference). Nor does a simple difference in medical opinion
> between the prison's medical staff and the inmate as to the latter's
> diagnosis or course of treatment support a claim of cruel and unusual
> punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,*
> 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). Moreover, "whether

government actors should have employed additional diagnostic techniques or forms of

treatment 'is a classic example of a matter for medical judgment' and therefore not an

appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d

1537, 1545 (11th Cir. 1995); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir.

1985) (mere fact inmate desires a different mode of medical treatment does not amount

to deliberate indifference violative of the Constitution); *Garvin v. Armstrong*, 236 F.3d

896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be

treated does not give rise to a constitutional violation.").

> To be deliberately indifferent, Defendants must have been
> "subjectively aware of the substantial risk of serious harm in order to have
> had a '"sufficiently culpable state of mind.""' *Farmer*, 511 U.S. at 834-
> 38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct.
> 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence
> of a serious risk of harm and legal causation, the prison official must be
> aware of specific facts from which an inference could be drawn that a
> substantial risk of serious harm exists - and the prison official must also
> "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  "The known risk of injury

must be a strong likelihood, rather than a mere possibility before a guard's failure to act

can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.

1990) (citations and internal quotations omitted).  Thus, in order to survive summary

judgment on his deliberate indifference claim against defendants Crenshaw and Finley,

Gutierrez is "required to produce sufficient evidence of (1) a substantial risk of serious

harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale

v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838

(To evade entry of summary judgment on a properly supported motion, plaintiff must

produce sufficient evidence demonstrating (1) an objectively substantial risk of serious harm; (2) subjective awareness of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries); *Marsh*, 268 F.3d at 1028-1029.

Gutierrez asserts that on one occasion approximately a week after injuring his hand on September 7, 2005 he "talk[ed] to Lt. Crenshaw & Lt. Finley" regarding his need to see the facility's physician for examination of his hand. *Plaintiff's Complaint - Court Doc. No. 1* at 3. Gutierrez maintains that after consult with the orthopedic surgeon he did not receive adequate physical therapy for his injury. Neither Crenshaw nor Finley recalls speaking with Gutierrez the week after his injury. *Defendants' Exhibit 3 (Affidavit of Annie Pearl Findley) - Court Doc. No. 14-2* at 5-6; *Defendants' Exhibit 4 (Affidavit of Martin Crenshaw) - Court Doc. No. 14-2* at 7-8. In addition, both Crenshaw and Finley deny ever discussing Gutierrez's injury with him and state they had no knowledge of the injury. These defendants likewise assert no knowledge of requisite medical treatment and maintain they were never informed of the necessity of physical therapy for the injury. Crenshaw and Finley, however, acknowledge that in the time frame referenced by Gutierrez the inmate did submit a grievance to the grievance clerk, officer Davis, concerning an appointment with the jail's physician for evaluation of the injury to his hand which the grievance clerk investigated and determined Gutierrez received such appointment on September 15, 2009. Defendant Crenshaw

18

addresses Gutierrez's claim, in relevant part, as follows:

> I do not recall speaking with Inmate Gutierrez concerning his hand.  I
> have reviewed his facility file and found no documentation of having
> spoken with him.  I did find a grievance regarding his complaint, however
> it was not addressed to me nor was I mentioned in the grievance.  If I had
> been made aware of an injury that Inmate Gutierrez had suffered, I would
> have taken the necessary steps to get him proper medical attention.  I have
> no medical expertise; therefore my responsibility would have fallen under
> the advice of  the medical staff.

*Defendants' Exhibit 4 (Affidavit of Martin Crenshaw) - Court Doc. No. 14-2* at 7-8.

Gutierrez has presented no evidence sufficient to create a genuine issue of
disputed fact with respect to his claim that defendants Crenshaw and Finley acted with
deliberate indifference to his medical needs.  There is nothing before the court which
indicates that these defendants personally participated in or had any direct involvement
with the medical treatment provided to Gutierrez.  Specifically, neither of these
defendants are health care professionals responsible for providing medical treatment to
inmates confined in the Montgomery County Detention Facility.  Additionally, the
undisputed evidentiary materials demonstrate that the facility's medical personnel made
all decisions relative to the course of treatment provided to Gutierrez during his
confinement in the jail and further establish that the responsibility for implementation
of treatment ordered by free-world physicians rested with the health care professionals
employed by the Montgomery County Detention Facility.  The law does not impose
upon correctional officials a duty to directly supervise health care personnel, to set
treatment policy for the medical staff or to intervene in treatment decisions where they

19

have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment).

The record is completely devoid of evidence that defendants Crenshaw and Finley had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Gutierrez, that these defendants actually drew this inference and thereafter ignored the risk. Gutierrez has therefore failed to establish any of the requisite elements of his deliberate indifference claim against defendants Crenshaw and Finley. *Carter*, 352 F.3d at 1350. Consequently, summary judgment is due to be granted in favor of these defendants.

A separate order will accompany this memorandum opinion.

Done this 14th day of August, 2009.


_____/s/   Wallace Capel, Jr._____
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE